IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| THOMAS PEREZ, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Civil Action No. 11-138 |
| KEVIN T. WEIR, | ) ) ) | Judge Nora Barry Fischer |
| Defendant. | ) | |

## MEMORANDUM ORDER

Presently before the Court is a Motion for Reconsideration filed by Plaintiff, Thomas Perez, Secretary of Labor, (the "Secretary") (Docket No. [112]), his Brief in Support, (Docket No. [113]), and *pro se* Defendant Kevin Weir's Response in Opposition, (Docket No. [115]). The Secretary seeks reconsideration of this Court's Memorandum Order of June 19, 2015, denying his Motion for Contempt, reasoning that Defendant Weir's failure to make installment payments due under the Second Amended Consent Judgment did not warrant the imposition of the sanction of contempt or the requested financial penalties given that the acceleration clause of the judgment had been triggered, making the entire outstanding balance immediately payable. (Docket No. 111). The Court further explained that the Second Consent Judgment constituted a "money judgment" which was not generally enforceable by contempt and more appropriately enforced via a writ of execution under Rule 69(a) of the Federal Rules of Civil Procedure. (*Id.*). For the following reasons, the Secretary's Motion for Reconsideration [113] is denied.

The Court initially turns to the prevailing standard of review. "Motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure are granted sparingly '[b]ecause federal courts have a strong interest in finality of judgments.'" *Jacobs v. Bayha*, 2011 WL 1044638, at *2 (W.D. Pa. Mar. 18, 2011) (quoting *Continental Cas. Co. v. Diversified*

1

*Indus., Inc.*, 884 F. Supp. 938, 943 (E.D. Pa. 1995)) (emphasis added). "Because of the interest in finality, at least at the district court level ... the parties are not free to relitigate issues the court has already decided," *Williams v. City of Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D. Pa. 1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992)), or to raise arguments that a party had the opportunity to present before the Court's decision, *see United States v. Dupree*, 617 F.3d 724, 732–33 (3d Cir. 2010) (quotations omitted). Rather, the purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). The moving party bears a heavy burden to demonstrate that an order should be reconsidered and the Court will only grant such a motion if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café*, 176 F.3d at 677 (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

In his Motion for Reconsideration and supporting Brief, the Secretary has not pointed to any intervening change in the controlling law, cited any new evidence which was not available when the Court issued its Order or pointed to any clear error of fact in the Court's decision. (*See* Docket Nos. 112, 113). Instead, the Secretary's primary contention is that the Court committed legal error by holding that the Second Amended Consent Judgment constituted a money judgment not enforceable by contempt in its earlier order. (*Id.*). But, the Secretary does not challenge the Court's interpretation of the acceleration clause of the Second Amended Consent Judgment as having been invoked due to Defendant Weir's failure to pay the necessary

installments, making the full balance of the judgment due and owing immediately or the Court's holding that the Second Consent Judgment may be enforced at this time via a writ of execution pursuant to Rule 69(a) of the Federal Rules of Civil Procedure.[1] (Docket No. 111). Despite this aspect of the Court's Order, the Secretary claims that "[e]nforcement through execution will not fully protect the public's interest in the enforcement requirements of ERISA" and summarily continues that "[c]ontempt is particularly appropriate in light of the clear evidence of Defendant's ability to pay." (Docket No. 113).

At the outset, none of the cases relied upon by the Secretary in support of the Motion for Reconsideration were provided in his Third Motion for Civil Contempt, or supporting Briefs.[2] (Docket Nos. 99, 100). Indeed, all of the cited cases by the Secretary were issued many years before this Court's Memorandum Order, making the precedent available to the Secretary in the event that he sought to rely on those decisions to support the contempt motion in this case on the theory that the Second Amended Consent Judgment was an "equitable" judgment rather than a "money" judgment as the Court noted. (*See* Docket No. 113). Hence, this position was never raised prior to the Court's decision denying the initial motion and is appropriately denied as waived. *See e.g., Dupree*, 617 F.3d at 728 ("we do not require district judges to anticipate and join arguments that are never raised by the parties."); *Galletta v. Velez*, No. CIV. 13-532 RBK/AMD, 2014 WL 631891, at *2 (D.N.J. Feb. 18, 2014) (quotation omitted) ("a motion for reconsideration is not a vehicle for a party to raise arguments that were effectively waived by being omitted from that party's original briefs."); *Prusky v. Prudential Ins. Co. of Am.*, 44 F.

---

[1] The Court notes that a writ of execution was utilized by the union plaintiff in a Labor Management Relations Act against Liberty-Pittsburgh Systems, Inc. before Judge Schwab, i.e., Civ. A. No. 11-992, *United Steel, Paper And Forestry, Rubber, Manufacturing, Energy, Allied Industrial And Service Workers International Union, AFL-CIO/CLC v. Liberty-Pittsburgh Systems, Inc.*

[2] Such decisions likewise were not cited in the first or second motions for contempt previously filed by the Secretary in this case. (Docket Nos. 31, 33, 78, 80).

App'x 545, 548 (3d Cir. 2002) (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (the purpose of a motion for reconsideration "is not to allow a party to 'simply change theories and try again,' thus giving them 'a second bite at the apple.'"). However, the challenged legal error was not material to the Court's exercise of its discretion to deny the contempt motion as the Secretary has not demonstrated that the imposition of financial sanctions for Weir's failure to comply with the Second Amended Consent Judgment is appropriate under the prevailing standard governing contempt proceedings and the facts and circumstances of this case.

To this end, it is well established that the moving party bears a heavy burden to demonstrate contempt by clear and convincing evidence. *Am. Bd. of Surgery, Inc v. Lasko*, 532 F. App'x 66, 69-70 (3d Cir. 2013). The purpose of civil contempt is not punitive but to coerce compliance with the Court's Order and/or to compensate complainants for losses caused by the disobedience. *Vizant Technologies, LLC v. Whitchurch*, 2015 WL 3477703, at *3 (E.D. Pa. Jun. 2, 2015). "To prove civil contempt the court must find that (1) a valid court order existed, (2) the defendant had knowledge of the order, and (3) the defendant disobeyed the order." *Id.* (citation omitted). "'[G]ood faith is not a defense to civil contempt.'" *Id.* (quoting *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994). But,

> a party's complete financial inability to comply with an order to pay sanctions is a defense to a charge of civil contempt. *See Hicks v. Feiock*, 485 U.S. 624, 638 n. 9, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). The alleged contemnor bears the burden of producing evidence of his inability to comply with the sanctions order. *See United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983).

*Egnotovich v. Greenfield Twp. Sewer Auth.*, 378 F. App'x 121, 123-24 (3d Cir. 2010).

> "[A]n order of civil contempt [is or will become] punitive if a contemnor is unable to comply with the order." *United States v.*

> *Harris*, 582 F.3d 512, 520 (3d Cir. 2009). While the party raising the impossibility defense has the burden of proving it, courts "will not be blind to evidence that compliance is now factually impossible." *Rylander*, 460 U.S. at 757, 103 S.Ct. 1548.

*Camerons Hardware Inc. v. Independence Blue Cross*, 363 F. App'x 197, 201 (3d Cir. 2010). Further, the Court of Appeals has held that it is an abuse of discretion for the Court to impose financial penalties to sanction a party without making a factual finding that the contemnor is financially able to pay the sanctions. *Id.* at 201. Finally, a hearing is not required in a contempt proceeding if there are no disputes of material fact, *see Harris v. City of Philadelphia*, 47 F.3d 1333, 1339 (3d Cir. 1995) (hearing not required in contempt proceeding where "[a]n evidentiary hearing would have added nothing of consequence to the record"), or if the record before the Court shows that compliance is impossible, *see Rylander*, 460 U.S. at 757 ("Where compliance is impossible, neither the moving party nor the court has any reason to proceed with the civil contempt action.").

Returning to the instant matter, now that the acceleration clause has been invoked, the entire balance of the judgment of $60,337.67 plus interest is due and owing by Weir immediately. (*See* Docket No. 95 at ¶ 3.d. ("In the event that Weir fails to make any installment payment as specified above, the entire balance then owing, plus interest to be calculated at the post-judgment rate of interest in effect at the time of the entry of the original Consent Judgment entered on August 30, 2011 … shall become immediately due and payable."))[3]; *see also Kingsly Compression, Inc. v. Mountain V Oil & Gas, Inc.*, 2010 WL 4929076, at *4 (W.D. Pa. 2010) (an acceleration clause is valid if "it is clear and unequivocal and is not reasonably susceptible to an alternative interpretation."). In this Court's estimation, even a cursory review of Weir's

---

[3] The Court notes that Plaintiff drafted the Second Amended Consent Judgment after negotiating with Weir at a time when he has been *pro se*. Precedent is clear that any ambiguities in the Second Amended Consent Judgment must be construed against the Secretary, which is the enforcing party. *See Am. Bd. of Surgery, Inc v. Lasko*, 532 F. App'x 66, 70 (3d Cir. 2013).

finances, as set forth in documents upon which the Secretary relies, (Docket No. 99-1), plainly demonstrates that the imposition of financial sanctions against him would be purely punitive rather than coercive because he has no meaningful assets and extraordinary liabilities in excess of $1 million such that it would be clearly impossible for him to pay the full amount due in excess of $60,000.00 at the present time.[4] *See Rylander*, 460 U.S. at 757. In addition, the Secretary has not proffered any evidence suggesting that Weir's finances have improved to such a degree that he would be able to pay the full balance of the judgment at this time and purge the contempt. *See e.g., Egnotovich v. Greenfield Tp. Sewer Auth.*, 378 F. App'x 121, 123-124 (3d Cir. 2010) (holding that the contemnors failed to show a complete inability to pay because "they have sufficient equity in their home to be able to pay the sanction in installments, they are current on their existing home loan, and an installment plan was acceptable to the Sewer authority."). Overall, imposing the requested fine of $250 per day (or even a smaller amount) as a sanction for Weir's failure to pay the judgment would not have the effect of coercing him to pay because of his apparent insolvency, making any such assessment purely punitive.

The posture of this case is akin to *Camerons Hardware Inc. v. Independence Blue Cross*, 363 F. App'x at 201, wherein the District Judge recognized that the contemnor had a clear inability to pay a $40,000 judgment, commenting "What do you want me to do? You can't get blood from a stone, and the argument he's making is that he doesn't have the capacity to comply, so it's not a willful disobeyance of my order." *Id.* The District Judge was persuaded by the

---

[4] The Court recognizes that the information is somewhat dated but Weir's affidavits make clear that he has no substantial assets and extraordinary liabilities. (*See* Docket No. 99-1). Weir's home was foreclosed upon and sold at a Sheriff's Sale in 2012. (*Id.* at 46). He also has nominal income in bank accounts which is consistent with Plaintiff's assertions that multiple checks that he has written in an effort to pay this debt were returned for insufficient funds. (*Id.*). In contrast, Weir has outstanding liabilities from liens and judgments totaling over $1 million consisting of, among other things: an IRS lien of $416,000; a judgment to Unisource of $470,000; a judgment to Blaksick of $170,000 and a judgment of $80,000 to Friedman. (*Id*. at 45). He also lists a personal guarantee on a $1.5 million obligation of Pittsburgh-Liberty Systems to Dollar Bank. (*Id*. at 20). Plaintiff has not challenged any of this evidence; indeed, Plaintiff utilized the information Weir put in the affidavits in support of the motion for contempt. (*See* Docket Nos. 99, 100, 107).

advocacy of the complaining party and imposed financial sanctions despite recognizing the perilous nature of the contemnor's finances. *Id.* The Court of Appeals reversed, holding that it was a clear abuse of discretion for the District Judge to impose financial sanctions against a party without making a factual finding that he was able to pay the underlying judgment or that he would be able to do so in the foreseeable future. *Id.*

Similarly, this Court is unable to make the requisite finding that Weir has the ability to pay the amount due under the judgment and there is also no indication in any of the parties' filings that the Secretary would be able to prove that Weir's financial position has changed so dramatically that he is now able to satisfy the judgment. (*See* Docket Nos. 99, 100, 107, 112, 113). At most, the Secretary has shown that Weir has started to earn a livable salary and increased his personal expenses on rent (which he and his wife apparently share) and his wife's vehicle. (Docket No. 99-1). But, these facts show only marginal improvement in Weir's finances that have no real effect on his assets (or lack thereof) and/or his extraordinary liabilities. (*Id.*). The Secretary has also rebuffed the Court's suggestion that this case should proceed to discovery in aid of execution and execution on the judgment under Rule 69 as counsel apparently favors the requested contempt hearing. (Docket Nos. 112, 133). Yet, the Court sees little reason to convene a contempt hearing where there are no real disputed facts, there is nothing of substance to add to the record, *see Harris*, 47 F.3d at 1339, and the Secretary will be unable to prove that the imposition of the requested financial sanctions against Weir would be appropriate due to his perilous financial situation, *see Rylander*, 460 U.S. at 757.

The Court further notes that the Secretary also seeks to recover attorneys' fees and costs arising from the attendance of out-of-town government attorneys to travel to Pittsburgh for a prospective contempt hearing as well as additional costs incurred by the ERISA plan

7

administrator attendant to the pursuit of this contempt action. (Docket Nos. 99, 100, 107). The Court is mindful that it is tasked with administering its cases in order "to secure the just, speedy, and inexpensive determination of every action and proceeding." FED. R. CIV. P. 1. It seems that convening a hearing on the Secretary's contempt motion would serve little purpose other than causing the litigants, counsel, the Court and the taxpayers to incur significant costs attendant to such unnecessary litigation, all of which further undermines the request for a hearing.

For these reasons, the Secretary's Motion for Reconsideration [112] is DENIED and the Court's Memorandum Order of June 19, 2015 stands.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date:   July 28, 2015

cc/ecf: All counsel of record.

cc:     Kevin T. Weir, pro se
        13 Little Sewickley Creek Road
        Sewickley, PA 15143
        (regular mail)